MAJURE, et al. *v.* WILLIAM H. ALSUP & ASSOCIATES, et al.

Feb. 23, 1953

No. 38682          21 Adv. S. 31          63 So. 2d 113

*Francis S. Bowling* and *Barnett, Jones & Montgomery,* for appellants.

608

*Satterfield, Ewing, Williams & Shell,* for appellees.

LEE, J.

Mrs. Claudia Prine Majure and June and Joyce Majure filed with the Workmen's Compensation Commission their claim against William H. Alsup & Associates, employers, and American Mutual Liability Insurance Co., carrier, for benefits on account of the death of their husband and father. From the denial of their claim by the attorney-referee, the full Commission, and the circuit court of Sharkey County, they appeal here.

William H. Alsup & Associates, were engaged in the construction and erection of electric power lines in Sharkey and Humphreys Counties. Their headquarters were at Hollandale. C. C. Majure, in their employ, had full charge of this work. He supervised and inspected the laying out of proposed power lines, the construction thereof, and the inspection of the same after the work was completed.

On Tuesday, October 10, 1950, Majure went from Hollandale to Rolling Fork, where he and J. L. Allen, the local R. E. A. manager, inspected lines until about 10:30 that morning when he left, stating that he had some crews to see about in the Belzoni area.

M. O. Patridge, who operated a domino and beer parlor at Rolling Fork, testified that Majure and a Mr. Lipsey were in his place about 10:30 A.M., at which time Majure drank a bottle of beer and Lipsey purchased a case of beer. Luther Hamilton testified that he saw Majure with Lipsey and Blackie Vincent at Maranto's store, near the bridge over Sunflower River on Highway 14, between 11 and 1 o'clock that day. Lipsey and Vincent were fishermen and had a camp several miles down the river. They were drinking, and one of them asked Majure if he was fond of fish and invited him to the camp, where he could eat a "bait" and carry some home. Majure bought a case of beer and a fifth of whiskey. The three men left in a car, and when they arrived at the bridge, one of the fishermen got out of the car and into a boat in the river.

Dan Sanderford, who lived about three miles south of the highway on the west bank of the river, testified that, as he passed the fishing camp around 12 o'clock he saw a car, Lipsey offered him a drink, and that Majure was standing in the door of the camp. On his return about 5 o'clock in the afternoon, Vincent walked across the road, Lipsey was standing in the water about waist deep, taking a bath, and that Majure was sitting in the middle of the boat, which was anchored in front of the camp.

A. Greer, who lived at a deer camp on the west side of the river about 9 miles south of the bridge, testified that Majure and Lipsey came to his camp in a car about 2 o'clock. When he inquired of Majure if it would be possible for him to get lights at his camp, he was told that it was 3 miles to a line across the river, and that it would be impossible for him to arrange for such service. He smelled the odor of beer or whiskey on Majure's breath. As he passed the fishing camp, going to the store, about 4 o'clock, Lipsey was standing in the front part of the boat naked and drinking a can of beer; Majure was sitting in the boat with his hands on the side; and Vincent was trying to crank the motor of the boat, which was about 40 feet from the bank. On his return from the store the car was still in the same place, but he did not see the boat or the men.

Sheriff Andy Crawford testified that Majure's body came to the surface on the following Thursday. It was found in the east part of the river, opposite the fishing camp, but slightly up the river. Vincent and Lipsey were taken into custody, and Vincent showed him the place where Lipsey put Majure out of the boat. It was about 2½ feet square and appeared as though something had wallowed on the ground. He found prints of clothing and a partly smoked cigar. The bank was steep, about a 45 degree incline, hard to climb and a twig had been broken from a nearby bush. $64.00 in money, a watch and other personal effects were removed from the body. Dr. B. R. Wilson performed an autopsy the day after the body was recovered. He found no water either in the lungs or the stomach. In his opinion Majure must have been dead when he was submerged in the water. He could have died of a heart attack and fallen in, or he could have been smothered and put in the water, or he could have been in the water and become scared, and a spasm would cause the throat and trachea to close. There was no evidence of violence on or about the body.

There was proof that a power line had been completed on the east side of the river shortly before this occurred, and that it was about 100 yards distant from the place where the body was found; and that another line was to be commenced within a few days from a point about a mile and a half west of this place.

The claimants contend that there were two reasons for Majure to be on the east side of the river opposite the place where his body was found, namely, to inspect the newly built line, and to inspect an improperly installed anchor; and that there were three reasons for him to be on the west side of the river at that point, namely, to inspect the old line locations, to inspect the new line locations, and to scout out the entire area before bringing in the construction crews. They maintain that he was in an area where his duties required him to be, or where he might properly have been, and that they are entitled to a presumption that his death arose out of and in the course of his employment.

Claimants cite a number of cases including Rogers v. Mengel, 180 So. 499, Harvey v. Caddo-DeSoto Cotton Oil Co., 6 So. 2d 747, Daigle v. Moody, 144 So. 596, Louisiana cases, and Whittemore Bros. Corp. v. DeGrandpre, 202 Miss. 190, 30 So. 2d 896. An analysis of all the authorities would unduly extend this opinion. It will suffice to say that a good statement of the legal principle which the claimants invoke is to be found in 120 A. L. R. 684, as follows: ''It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.''

In T. H. Mastin & Co. v. Mangum, (Miss.) 61 So. 2d 298, it was recognized that the rule in workmen's com-

pensation cases is that the employee has an overall burden of proving facts requisite to his recovery.

The above rule is in accordance with Sanford v. A. P. Clark Motors, 45 So. 2d 185, a Florida case, where it was said: ''In proving that an accident took place in course of one's employment a claimant is not bound by the preponderance of evidence rule or the rule of proof beyond and to the exclusion of a reasonable doubt as in criminal cases. He is required to prove or show a state of facts from which it may be reasonably inferred that the deceased was engaged in the Master's business when the accident took place.''

■■■ Granting that Majure was in an area where his duties required him to be, or where he might properly have been, practically all of the testimony both negatives and excludes the idea that he was engaged in his employer's work from about 11 A.M. until about 5 P.M. that day. There is no proof that he did anything, or purposed to do anything, insofar as his duties on the west side of the river were concerned. Neither is there proof that he did anything, or that he purposed to do anything, with reference to his duties on the east side of the river. He had no duties to perform in the river where his body was found. Neither is there proof that he was on his way to a place where his duties called him. It is a mere surmise that he was crossing the river in a boat in order to make an inspection either of the new line, or of the improperly installed anchor. It is difficult to comprehend that he would cross the river in a boat and undertake a torturous climb up the steep bank on the other side in order to make such inspections, when, according to the proof, he could have easily driven his car down a substantial road on the east bank of the river for that purpose. What he was doing at the time of his death is completely shrouded in speculation but the evidence is that he was not engaged in his employer.'s business. The presumption relied on by the claimants, therefore, vanishes. The claimants failed to show by any substantial

evidence that the death here in question arose out of and in the course of Majure's employment. It follows therefore that this cause must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.