WINTERS HARDWOOD DIMENSION CO. *v.* HARRIS' DEPENDENTS.

No. 41173          May 18, 1959          112 So. 2d 227

*Satterfield, Shell, Williams & Buford,* Jackson, for appellants.

*B. H. Loving, A. M. Edwards, Jr., Lenore L. Prather,* West Point, for appellees.

ROBERDS, P. J.

Dave Harris departed this life July 17, 1957. At the time he was an employee of Winters Hardwood Dimension Company, Inc., one of the appellants. Harris' widow, on behalf of herself and her three children, instituted this proceeding under the Mississippi Workmen's Compensation Act to procure an award for such

dependents. The attorney referee disallowed the claim. The commission, by divided vote, affirmed the order of the referee and the circuit judge granted the award. It is from his action in so doing the employer and his bondsmen appeal to this Court.

■■ Counsel for all parties agree that the deciding question is whether the work which Harris was performing contributed to his death under the circumstances of this case. That burden, of course, was upon the claimant. The solution of that question depends upon the application of the principle that where an employee is found dead at the place his duties require him to be or where he might probably have been in the performance of his duties during the hours of his work, then it is presumed that the accident arose out of his employment within the compensation act, in the absence of evidence that he was not engaging in his master's business. These are the conditions under which the accident happened.

The nature and character of the work in which Harris was engaged is described by able counsel for appellants in these words: "On the date of death, the decedent had duties of taking waste lumber and running it through a series of saws wherein it was cut into stove wood size. He picked up end saw cuts, put them in a buggy and dumped them, cutting strips to stove wood size. This was accomplished by his placing the refuse lumber on a table wherein chains moved the lumber into the saws carrying it on beyond the saws and into a conveyor belt which ultimately carried the stove wood up a conveyor and into the back end of a dump truck. His duties further required him, on occasion, to drive this dump truck to another area on the yard and operate the automatic dump so that the lumber would be discharged from the dump truck."

The proof shows that Harris was an unusually strong man; that he was 30 years of age. There is no proof

of prior illness other than a slight attack of indigestion which occurred two months before his death; that his work called for speed and much exertion. His death occurred on a hot day in July.

His home was a short distance from the mill plant. On the day of his death he went to his home for lunch about 12 o'clock, ate a hearty meal and nothing appeared to be wrong with him. He returned to his work about one o'clock. His death occurred about two o'clock. The first man who saw him after his attack was Willie Lee Jones, a fellow workman. Jones saw that the wood was piling up and he began to look for Harris. Jones was working within about twelve feet of Harris. He described the circumstances in these words: "And so I looked back over there and I seen him stretched out over there, I went and started shaking and calling him—he was stretched out across the pulley—that chain and it looked like he sort of stumbled and fell across it." This witness further described the scene in these words: "Well, he was right around behind—his arm hit upon the side of his head so he couldn't fall all the way down in there on account of we had a pipe that was causing the chains to run on to keep it slack and his head was laying upon that big pipe there and his stomach was laying upon the pulley that was pulling the chain—." He had a cut place on his arm and an abrasion on his stomach. "He was just slobbering at the mouth a little and his eyes were walled back." His clothes were wringing wet with prespiration. Jones called for help. The co-workers placed Harris in the truck and rushed him to the Flowers-McCharen Clinic where Dr. George L. Miller, Jr. saw him immediately. Harris was dead. There is no definite proof as to the specific time of his death.

Dr. Miller testified at the hearing before the attorney-referee. The substance of his testimony is this. His examination of Harris was cursory—enough to determine that he was dead. He did not make a thorough examination of him and, of course, there was no autopsy.

With the facts before him at that time he reported the cause of death as coronary occlusion. He reported this to the insurance carrier, saying also he found a three-inch laceration on Harris' arm and an abrasion on his abdomen. However, both counsel framed and propounded to Dr. Miller at the hearing hypothetical questions bearing upon the cause of the death of Harris. These questions embodied the facts heretofore set out, so that Dr. Miller had the benefit of his own personal examination and of the facts and circumstances embodied in the hypothetical questions. At this hearing Dr. Miller said he could not be sure whether the cause of death was a heart attack or a heat stroke but said that in his judgment it was a heat stroke. Under these circumstances the following rule is applicable. " 'It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.' " Majure v. Wm. H. Alsup & Associates, et al., 216 Miss. 607, 63 So. 2d 113, 115.

Dunn in his Mississippi Workmen's Compensation, Mississippi Practice Series, page 127, paragraph 166, states the rule in this language: "The rule is that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, there is a presumption that the accident arose out of and in the course of the employment. However, the presumption is only prima facie and it vanishes when the evidence is that the deceased was not engaged in his employer's business. The over-all burden remains on the claimant, and

where the presumption is rebutted, it cannot form the basis for an award."

Larson states this to be the majority rule: "When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment."

Rushing, etc. v. Water Valley Coca-Cola Bottling Co., et al, 232 Miss. 338, 98 So. 2d 870, and Erwin v. Hayes, et al, 236 Miss. 123, 109 So. 2d 156, relied upon by appellants, are not to the contrary. They recognize the rule but the facts are different from the facts of the case at bar.

There is no evidence of the cause of death other than the foregoing circumstances and the guess, or best judgment, of Dr. Miller. Appellants offered no evidence.

The parties take issue as to whether the cause of death was a heart attack or heat stroke. Whether Harris died of the one or the other causes does not carry great weight as to liability in this case. Either could have produced death and, so far as the evidence in this record is concerned, the work he was doing likely contributed to, or aggravated the cause of, his death—at least such conclusion was amply justified by the undisputed evidence in this case.

Appellants urge the contention that the commission passed upon this question and the circuit judge and this Court should not disturb the finding of the commission. Ordinarily, of course, that is true. However, there is no substantial contradiction in the evidence in this case as to the material facts. The case rests upon the presumption and inference resulting from the undisputed facts. It is clear to us that claimants made out a prima facie case under the inference and presump-

tion above set out, and there is no testimony overcoming said inference and presumption.

Affirmed.

*Hall, Holmes, Ethridge,* and *Gillespie, JJ.,* concur.