RUSSELL *v.* SOHIO SOUTHERN PIPE LINES, INC.

No. 41151 May 25, 1959 112 So. 2d 357

724

*Henry & Barbour, Herman B. Decell,* Yazoo City, for appellants.

*Watkins & Eager*, Jackson, for appellee.

McGehee, C. J.

This suit involves the claim of Mrs. Gladys Russell, dependent widow of the employee A. W. Russell, deceased, and for the dependent minor child, John Steven Russell, for death benefits under the Mississippi Workmen's Compensation Act of 1948, as amended.

The said A. W. Russell died of a myocardial infarction—a heart attack—on January 30, 1956, he having collapsed while at work on his employer's premises in the course of his employment on the day of his death. His employer was the appellee, Sohio Southern Pipe Lines, Inc., a self-insurer.

The proof discloses that Mr. Russell began work with the said company as a manual labor in 1939 and rose through the ranks to become supervisor of the Dixie area, which included the Tinsley Oil Field in Yazoo County, Mississippi, near the railroad station of Anding. His regular hours for work were from 7 A. M. to 3 or 3:30 P. M. from Monday through Friday, and he usually visited the office on Saturday and Sunday mornings. It is undisputed that he was a capable, loyal and very conscientious employee, and that he was about forty-six years of age. It is also undisputed that he had been suffering f r o m pre-existing hypertension, shortness of breath, and nervousness, resulting in a rash or hives from time to time, beginning in the year 1947. He had been treated regularly from March 1947 by a capable physician with considerable experience in the treatment of heart ailments, Dr. R. J. Moorhead of

Yazoo City, who characterized the principal illness of this employee as being "moderately severe hypertension."

According to the testimony of the claimant, Mrs. Gladys Russell, her husband had suffered from chest pains, shortness of breath, etc. during the period of time referred to by Dr. Moorhead, and that he had an episode in the Spring of 1955 while working in the yard of their home and cutting shrubbery, and that he then collapsed on account of shortness of breath when it became necessary for her to assist him to get into the house.

On Monday, January 30, 1956, this employee reported for work at the usual time and became engaged in his normal activities as supervisor of approximately fifteen other employees, and in which position he was responsible for the ascertainment of the cause of any shortage in the oil which was being transported from the Tinsley Field in Yazoo County through the pipelines to Mayersville in Issaquena County on the Mississippi River; that on that morning he drove his car from Yazoo City to the office at Anding, which is a distance of approximately fifteen miles; that about eight o'clock on that morning he drove to the pumping station, a distance of six or seven miles, to get the reports relating to the transportation of the oil, and then returned to the office at Anding (in the Tinsley Field).

The proof further discloses that this employee continued about the performance of his supervisory duties during the forenoon of that day, and that he prepared a lunch at the noon hour consisting of a can of tomatoes, okra and some soup; that soon thereafter, and while about the discharge of his duties, he complained of pain in his lower chest or stomach, and that about two o'clock that afternoon he had walked from the office a short distance to the warehouse or workshop on two occasions, and that he had done so two or more times during the forenoon; that on one of these occasions he returned

from the warehouse or workshop with a report or something of similar nature in his hand; and that finally, while in the warehouse or workshop, where he had been for only five or ten minutes, he called out to Mr. Ed. Gary, one of his subordinates, and that the latter went to the warehouse or workshop where he found Mr. Russell sick and helpless; and Mr. Gary testified that Mr. Russell told him "I am a sick man," and that thereupon Mr. Gary and another employee placed Mr. Russell in an automobile and carried him to the office of Dr. John V. James, a general practitioner in the Village of Bentonia, where he was examined, given temporary relief and sent to the hospital; that on the way to the hospital Mr. Russell expressed a desire to be taken first to the office of Dr. Moorhead, and he advised the doctor that he began suffering pain in his chest during the forenoon; that he was kept at this doctor's office approximately an hour, and then sent to the hospital at Yazoo City, where he died shortly after arrival. Mr. Russell had not advised the other employees of his illness during the forenoon, but the proof discloses that this employee was the superior of the other employees, and that hence there was no one in authority over him to whom he should have reported his illness. It was therefore not shown that any one in authority had been advised of Mr. Russell's pre-existing illnesses.

The medical testimony is in agreement that this employee died of a myocardial infarction. Dr. Moorhead and Dr. Thadius D. Labeki both testified that there was a causal connection between Mr. Russell's employment and the onset of the heart attack, the former testifying to such as a fact and the latter giving his opinion to that effect as a specialist in cardiac diseases. Dr. James, the general practitioner of Bentonia gave as his opinion that there was no causal connection between the employment and the fatal heart attack. Dr. W. H. Rosen-

blatt of Jackson, Mississippi, testified as an expert in heart diseases and gave as his professional opinion, in response to hypothetical questions, that there was no causal connection between Mr. Russell's employment and the onset of his heart attack. He was corroborated on behalf of the appellee by the answers of Dr. S. H. McDonnieal, Jr. of Jackson, in response to hypothetical questions.

Dr. Moorhead, as a witness for the claimants, in testifying as to what occurred during the time that Mr. Russell was at his office on the afternoon of his death, said: "Well, in the history he revealed that he had had some discomfort during the morning and had not seen a doctor and he had taken no medicine or anything of the sort. He thought it was primarily indigestion, and after dinner he saw Dr. James when his pain began to get so severe and I asked him why didn't he see Dr. James at first when he first got into trouble, and he said well, he was trying to get everything in order before he could go to the doctor because he thought maybe he'd be waiting all afternoon or something. Q. And he said he was trying to get everything in order. What was he referring to? A. I presume it was his work. He was trying to get somebody informed as to what he was trying to do so they could take over while he came in. * * * Q. If, Dr. Moorhead, you had seen this patient earlier in the day when he first began to complain of pains in the chest and lack of appetite, knowing his medical background and history that you did, what would you have done for him just then? A. Put him to bed. Q. Would you have recommended the continuation of his job right at that moment? A. No, I'd put him to bed. * * * Q. State, Dr. Moorhead, in your opinion what effect, if any, probably resulted from Mr. Russell's continuation at his employment after observing the symtoms which you received in his history. A. I think continuation after he had his original pain probably is the

cause of his death, on the basis he had a chance to have treatment and he delayed." There was no contradiction of the foregoing testimony.

There was testimony on behalf of the claimants that the employee had engaged in the climbing of oil tanks and the walking of the pipelines to ascertain the cause of shortage in the quantity of oil being transported, that is to say in looking for leaks in the pipelines, but this testimony was not related in point of time to the fatal heart attack suffered by Mr. Russell on January 30, 1956. He had been in the employ of the appellee since 1939 and during a great portion of that time he had been coming up through the ranks as a manual laborer until he attained the position of supervisor of the area about the year 1947. There was also testimony that on the day of the fatal heart attack, Mr. Russell had received a telephone call, presumably from his wife, to the effect that she was going to have to go to the hospital for another operation, but Drs. Rosenblatt and McDonnieal, testifying, in substance, on behalf of the appellee, gave as their opinion that such an incident would have been calculated to have caused the heart attack shortly after the receipt by the employee of such information. There was other testimony to the effect that the employee worried over his responsibility in connection with ascertaining the cause of the shortage in the amount of oil being transported from the Tinsley Field to the station at Mayersville, and that a substantial shortage had occurred within a day or two prior to his death, the cause of which was not ascertained until after his death. Dr. Moorhead testified that on occasions Mr. Russell would be "in a stew" in regard to the shortage. But the preponderance of the evidence is to the effect that it is a common occurrence to have a shortage or an overage, and that this would be balanced off at the end of each month, and that shortages would sometimes be due to errors in gauging the

oil or bookkeeping, and that there was no occasion for any serious worry as to these discrepancies. There was other proof that Mr. Russell was a calm person who did not let anything worry or excite him.

J. R. Samples, division superintendent of the company, said the job required Russell "to drive his car, get to work and do office work, guide the people, talk to them, hold safety meetings and gauger meetings, discuss problems of the area with his people."

■■ It has been heretofore recognized by our decisions that there is a presumption of a causal connection between the employment and the injury or death when the onset of a heart attack occurs while the employee is about his work and engaged in the duties of his employment, and that the fatal consequences arise out of and in the course of the employment. The question therefore in this case is whether or not the employer has met the burden of overcoming that presumption.

■■ It is also well-settled, and requires no citation of authority, that no unusual exertion on the part of the employee is necessary to make the claim compensable where it is clear that there is a causal connection between the work of the employee and injury or death.

■■ The Court is of the opinion that under the cases of Goodnite v. Farm Equipment Company, et al., 234 Miss. 342, 103 So. 2d 391, Poole v. R. F. Learned & Sons, et al., 234 Miss. 362, 103 So. 2d 396, and particularly the case of Central Electric Power Association, et al. v. Hicks, 236 Miss. 378, 110 So. 2d 351, we are not bound by the decision of the Workmen's Compensation Commission in all cases where the testimony is conflicting. The writer of this opinion and two other Judges dissented in the Hicks case and also in the case of Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 308, 110 So 2d 359, but we are nevertheless bound by the majority opinions in those cases. In the Hicks case, supra, it was recognized in the majority opinion that "The general

rule is that a decision of the commission on disputed issues of fact will be affirmed, where there is substantial and reasonable evidence in the record to support the commission's findings of fact. As an abstract statement, that rule is correct, but it means nothing apart from the statutory standards and the judicial standards based upon the statute which have been established in a large number of cases in recent years. These standards always consist of two parts, one defining the type of questions administrative determination of which is binding upon the courts, and other which defines the type of questions that are reviewable by the courts. But either part is and should be sufficiently flexible to permit the court to check any fundamentally erroneous exercise of administrative power. And questions of fundamental importance are always open to judicial review. 42 Am. Jur., Public Administrative Law, Sec. 206. There must be an application of the pertinent statute in a just and reasonable manner.''

In other words, in the Hicks case, supra, the Court held in effect that notwithstanding that the testimony is conflicting and the Commission's findings are supported by substantial evidence, this Court will nevertheless seek to ascertain whether or not the beneficent purpose of the Workmen's Compensation Law has been carried out.

■■ ■ We recognize that the decisions lastabove referred to are different on their factual issues, but we think that they support the conclusions reached by the Court in the instant case in reversing the findings of the attorney-referee, the full Commission, and the decision of the circuit court.

We think that the Commission was in error in finding that ''There was little to be done on that particular day,'' meaning January 30, 1956. On Suggestion of Error in the case of Insurance Department of Mississippi v. Dinsmore, 233 Miss. 569, 104 So. 2d 296, it was

held that the deceased had "a strenuous administrative job involving physical exertion, which phrase includes both bodily effort and mental activity;" and the Court held that the stress and strain of the deceased in that case in connection with her working activities contributed to her death, and that this phrase comprehends both "bodily and mental activities, accompanied by stress and strain, all of which are physical in nature." It was there noted that the Workmen's Compensation Act covers "employments of all types," and under that case the Commission should be held in error in finding that on the day in question Mr. Russell had "little to be done," and engaged in "virtually no exertion."

This Court is of the opinion that the attorney-referee, full Commission, and the circuit court were in error in finding that Mr. Russell's employment did not contribute to, aggravate or precipitate his heart attack. As heretofore stated, the attending physician, Dr. Moorhead, and Dr. Labeki, specialist in cardiac diseases, found causal connection between employment and Mr. Russell's death. Dr. McDonnieal, testifying as an expert on hypothetical questions generally, did not believe any connection existed, but he conceded that employment could aggravate a long-standing hypertensive condition. This employee had atherosclerosis, meaning an infirmity of long-standing, and the Court is of the opinion that under all of the facts and circumstances hereinbefore mentioned, it cannot be said that the responsibilities and the work of this employee, aided by the legal presumption that where the onset of a heart attack occurs while the employee is engaged about the duties of employment such heart attack arose out of and in the course of employment, did not establish causal connection between the employment and the fatal onset of the attack, notwithstanding the medical testimony on behalf of the appellee.

On the basis of the decisions hereinbefore cited, the decision of the attorney-referee, full Commission, and the circuit court, must be reversed and compensation awarded to the claimants and the cause remanded to the commission.

Reversed, judgment here for appellants, and remanded to commission.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.

ON MOTION FOR ALLOWANCE OF INTEREST AND PENALTIES.

McGEHEE, C. J.

In this case there was a denial of any death benefits to the claimants, Mrs. Gladys Russell and minor child John Steven Russell, as dependents of A. W. Russell, deceased, whose death occurred as a result of a heart attack which had its beginning while the employee was on the premises and engaged about the duties of his employment.

The death benefits were denied by the attorney-referee, by the full Commission and by the Circuit Court of Yazoo County. On appeal here, we reversed the decision denying the death benefits to the claimants and held that they were entitled to an award for the same. We reversed the decision of the circuit court which affirmed the decision of the Workmen's Compensation Commission wherein it had affirmed the decision of the attorney-referee in denying the death benefits to the claimants.

In this motion it is alleged that the claimants made claim for "all compensation death benefits, interest and penalties before the attorney-referee, the Commission and the Circuit Court of Yazoo County, Mississippi" but in the answer of the appellee to this motion it is alleged that no interest or penalties were asked for before the attorney-referee, full Commission and the circuit

court. Since we have remanded the case in order that the Workmen's Compensation Commission may give effect to the opinion heretofore rendered by us in reversing the action of the attorney-referee, the full commission and the circuit court, we have concluded to overrule the present motion insofar as the allowance of penalties is concerned in order that the Commission on remand may make such an allowance in regard thereto as it may determine to make in its discretion, and we sustain the motion to the extent of allowing six percent interest on the regular installments of death compensation benefits from the respective dates that the claimants were entitled to receive the same; and as to the allowance of funeral expenses not exceeding the sum of $350, the Workmen's Compensation Commission may make such an allowance as it may determine that the claimants are entitled to receive, not exceeding the said sum of $350. In other words, we sustain the motion in part and overrule the same in part without prejudice to whatever rights the claimants may have in the premises under the decision of this Court in the case of Goodnite v. Farm Equipment Company, 106 So. 2d 383, 234 Miss. 342, and Goodnite v. Farm Equipment Company, 106 So. 2d 683, 234 Miss. 342. The overruling of the motion in part being without prejudice in order that the items in question may be considered and determined by the Workmen's Compensation Commission.

Motion sustained in part and overruled in part.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.