FUTORIAN-STRATFORD FURNITURE COMPANY, et al. *v.* DEPENDENTS OF OSWALT, DECEASED

No. 43010          April 13, 1964          162 So. 2d 645

*Mitchell, McNutt & Bush,* Tupelo, for appellants.

*Carlisle & Carlisle,* Columbus, for appellees.

LEE, C. J.

Mrs. Helen Oswalt, on October 4, 1960, while working at the plant of the Futorian-Stratford Furniture Company in Eupora, Mississippi, slipped and fell as she was lifting some material, and, in doing so, injured her right shoulder. On October 6, 1961, the attorney-referee after a hearing, awarded her temporary total disability of $32.93 per week, based on an average weekly wage of $49.40, payable each week thereafter during the continuance of such disability. This order was complied with until her death on April 29, 1962.

Following her death, Harford Oswalt, widower, James Larry Oswalt, born June 15, 1945, Dorothy Helen Oswalt Holland, born July 1, 1947, and Joyce Diane Oswalt, born January 19, 1950, filed claims for benefits under the Workmen's Compensation law. The attorney-referee, after hearing the evidence, denied the claim of the husband because he was not a dependent, and awarded benefits to the three children. This action was affirmed, on successive appeals, by both the commission and the circuit court. From the judgment entered, the employer and its insurer appealed.

Dr. Stennis Wax saw Mrs. Oswalt immediately after she sustained the injury and attended her thereafter until her death, having seen her during the 19 month period a total of 217 times. Too, he saw her in his office on the morning preceding her death that night and also about five minutes after she had expired. The area of the injury was a posterior right shoulder, and, in his opinion, involved the right rhomboideus muscle and the nerve roots of the thoracic vertebras 1 and 2. She suffered constant and intense pain, which required

substantial doses of sedatives to give even temporary relief. The doctor, in arriving at an opinion, said that the decedent had been in good health; that she was married at an early age and had children physically larger than she was; that, before her injury, she was capable of holding a job and staying at work every day; that, after falling and hurting her shoulder, she was unable to work or do anything of consequence, and that "everything just sort of went to pot with her"; that usually, if pain gets too bad, the sufferer will faint or lose consciousness, but that something happened to this woman after her injury, and that over the period, she had grown worse; that she had lost some of her weight and her color grew worse; that she appeared tired and dissipated, lost interest in things, and then just died. He enumerated a number of ailments, which cause death, mentioning in particular cardiac or cerebral conditions and even suicide, but he could not find any symptoms or evidence of those particular maladies — and he had seen her several hours before, and within five minutes after, her death. He said "I feel" that there was a "material" relationship between her injury and her death, although he was unable to ascribe by a medical term the exact immediate cause of death.

Dr. Charles L. Neill, to whom Mrs. Oswalt had been referred on December 5, 1960, for examination, in an elaborate statement of his findings, together with their insufficiency for a diagnosis of the condition, in answer to whether the injury contributed to or accelerated the death, replied: "I would say that it was farfetched because we never did really know or arrive at a medical decision as to what * * * her whole problem was from a diagnostic standpoint". He then admitted that the extent of her general debility from continuous pain was not known, and that he did not know just what the effect was. But he said that this could not be overlooked in the case. Finally, with respect to whether this was

a contributing cause, he said "I would say that certainly it is a strong possibility. I don't know that I could actually go into the legal area of saying that it was a probability."

Dr. L. K. Hodges, an associate of Dr. Neill, who first saw Mrs. Oswalt on July 29, 1961, likewise stated his findings and lack of diagnosis. He described the condition as a "frozen shoulder". Finally, in answer to the question as to whether or not in his opinion the woman's injury aggravated or contributed to her death, he said, "No, sir." But he was then quick to say that he would not disagree that it was possible for pain and suffering to produce such a general condition that one's resistance could be lowered and thus contribute to the result. He also said that, in the absence of an autopsy, the next best method for determining the cause of death was an examination as soon as possible after death; and that Dr. Wax was in a better position to express an opinion as to the cause of death than he was.

The appellants contend (1) that there was no causal connection between the injury and death. The basis for this contention is that the medical proof was not sufficient to show a causal connection.

But all of the evidence showed that, following the injury, Mrs. Oswalt was totally disabled. She made no recovery whatever, but grew progressively worse until death. Dr. Wax said that it was "his feeling" that there was a "material" connection between her injury and death. The appellants take umbrage at the doctor's expression "it is my feeling". That expression was simply one way that the doctor had of stating his opinion. It clearly shows that he was of the opinion that it was a "material relationship".

The other two doctors were never satisfied of a diagnosis and would not say that there was a material relationship between the injury and death. However, Dr. Neill stated the matter about as strongly as he

could well do, with the limited information which he had, when he said, from those circumstances, that there was a "strong possibility" of relationship. Dr. Hodges conceded that Dr. Wax was in better position to determine the cause than he was.

In Holman v. Standard Oil of Ky., 242 Miss. 657, 136 So. 2d 591, the circumstance and history were undisputed, as was also the lay testimony. On the question of whether or not the increased activity of the claimant on the previous day probably aggravated, precipitated, or contributed to the occurrence of the heart attack, the doctor said: "It may have. It may well have." In that state of the record the Court said: "With all of the undisputed facts, the need for conclusive confirmation by medical findings in this case is not a condition precedent to the award of compensation benefits. Conceding that the answers of the doctor are conflicting, at any rate, they do substantially corroborate the overwhelming lay proof of causal connection between the work and the attack."

Also in the case of Reyer v. Pearl River Tung Co., et al, 219 Miss. 211, 68 So. 2d 442, the opinion, aware that no person possesses infallibility, said: "With all of the knowledge now possessed by the great medical profession, it is a matter of common knowledge that sometimes the diagnosis of human ailments baffles the greatest medical minds." It recognized the inability of doctors to put their fingers on the exact physical cause in all cases where death results. But, as said in the Holman case, supra, it is not necessary to have conclusive confirmation by medical findings.

██ ■ The Court therefore holds that the attorney-referee and the commission had sufficient evidence to warrant the conclusion that there was causal connection between the injury and death.

The appellants also contend that the commission was in error (2) in awarding compensation to Dorothy

Helen Oswalt Holland, who was under 18 years of age both at the time of her mother's injury and also at her mother's death, but who was unmarried at the time of her mother's injury but married and not wholly dependent on her mother at the time of death, but instead, dependent on her husband.

■■ ■ Section 6998-13, Code of 1942 Rec., provides a death benefit in case the injury results in death. The injured person alone receives benefits, under the law, as long as she lives, subject to the limitations of the statute. Death benefits are payable to her dependents as named in the subsections of the above statute. Subsection (d) thereof is particularly applicable in this instance. Thus, in cases of death, dependency is determined as of that time.

In the case of Anderson-Tully Co. v. Wilson, 221 Miss. 656, 74 So. 2d 735, Major Wilson was killed June 30, 1952. At the time of his death, Elizabeth, a child, was dependent upon him, and the Court said "that is the controlling date under this section", referring to Section 6998-13(g). See also Prentiss Truck & Tractor Co. v. Spencer, 228 Miss. 66, 87 So. 2d 272, where Joseph Spencer was injured March 6, 1951, and died September 12, 1951. See also Franklin v. Jackson, 231 Miss. 497, 95 So. 2d 794.

■■ ■ Under Section 6998-02 on Definitions of the Act, Subsection (12) thereof says that "Child * * * does not include married children unless wholly dependent on him". At the time when it was in order for Dorothy Oswalt Holland to claim benefits, because of her marriage and acknowledged dependency upon her husband and not on her mother, although she was under 18 years of age, she was ineligible for compensation benefits. For that reason, her claim should have been disallowed.

Consequently the judgment of the circuit court, affirming the award of the commission insofar as it provided benefits for James Larry and Joyce Diane Os-

walt, will be affirmed; but the award, insofar as it allows benefits to the married daughter Dorothy Oswalt Holland, will be reversed and dismissed.

Affirmed in part, reversed and dismissed in part, and remanded to the Commission.

*Ethridge, Gillespie, Brady and Patterson, JJ.,* concur.