423 So.2d 114 (1982)
Annie Ruth JOHNSTON, Deceased, Dependents of
v.
HATTIESBURG CLINIC, P.A. and St. Paul Fire & Marine Insurance Company.
No. 53445.
Supreme Court of Mississippi.
November 17, 1982.
McMahan & McMahan, Michael B. McMahan, Hattiesburg, for appellants.
Aultman & Aultman, Lawrence C. Gunn, Jr., Hattiesburg, for appellees.
Before PATTERSON, C.J., and BOWLING and PRATHER, JJ.
BOWLING, Justice, for the Court:
The appeal of this workmen's compensation case comes from the Circuit Court of Forrest County. The dependents of Annie Ruth Johnston, deceased, appeal from an adverse order of the lower court affirming the decision of the Workmen's Compensation Commission denying death benefits. Mrs. Johnston died from a heart attack, the onset of which occurred while she was engaged in her employment with the appellee, Hattiesburg Clinic. Appellants assign the following alleged errors:
I. THE CIRCUIT COURT OF FORREST COUNTY ERRED IN DISMISSING THE PETITION FOR APPEAL FILED ON DECEMBER 30, 1980.

*115 II. THE COURT ERRED IN ITS FINAL JUDGMENT OF SEPTEMBER 15, 1981.
III. THE FACTUAL FINDINGS OF THE MAJORITY MEMBERS OF THE COMMISSION ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.
IV. A REBUTTABLE PRESUMPTION OF CAUSAL CONNECTION BETWEEN EMPLOYMENT AND DEATH SHOULD HAVE BEEN APPLIED TO THIS CASE, AND THE DEFENDANTS FAILED TO OFFER SUFFICIENT EVIDENCE TO REBUT THE PRESUMPTION OF CAUSAL CONNECTION.
It is necessary first to dispose of the alleged error of the circuit court in dismissing appellants' petition for appeal from the commission's order to the circuit court.
The order of the Workmen's Compensation Commission was entered on September 19, 1980. On October 3, 1980, appellants filed a motion requesting a review of the evidence by the commission. On November 6, 1980, the commission entered its order overruling the motion for review. Appellants' notice of appeal to the circuit court was filed on November 13, 1980. Appellees contended successfully before the circuit court that the October 3 motion to review did not serve to toll the thirty-day appeal requirement from the commission to the circuit court. [MCA § 71-3-51 (1972)].
The question appears to be of first impression before this Court. We first note the provisions of MCA § 71-3-53, which provide that:
Upon its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission may, at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one (1) year after the rejection of a claim, review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation... . (Emphasis added).
In looking at the appeal statute and the above quoted section on "continuing jurisdiction of the commission," it appears that the motion of appellants, when filed within the thirty-day appeal period, would toll the thirty-day requirement until an order disposing of the motion is entered by the commission. Going further, there are several other considerations. We have held that a rule of statutory construction is that "where the language of a statute is doubtful and the necessity for construction arises, the court may consider whether the legislature could have intended a construction that would be highly injurious, rather than one beneficial and harmless." See McCaffrey Food Market, Inc. v. Miss. Milk Commission, 227 So.2d 459 (Miss. 1969).
Another appeal requirement in workmen's compensation cases is that the losing party before an administrative judge is required to file his notice of review before the full commission within twenty days from the date of the order of the administrative judge. [MCA § 71-3-47 (1972)]. In the case of Day Detectives, Inc. v. Savell, 291 So.2d 716 (Miss. 1974), the losing party before the administrative judge filed a similar motion as was filed here within the twenty-day statutory period. We held that the filing of that motion tolled the twenty-day statutory appeal time from the administrative judge's order to the full commission.
It further appears that the motion filed herein after a final judgment by the commission is similar to the filing of a motion for a new trial in a court of record. We have held many times that the filing of such a motion tolled the time for appeal. Garrett v. Miss. State Highway Commission, 227 So.2d 856 (1969); Gulf, Mo. O.R. Co. v. Forbes, 228 Miss. 134, 87 So.2d 488 (1956); Davidson v. Hunsicker, 224 Miss. 203, 79 So.2d 839 (1955); Edwards v. Peresich, 221 Miss. 788, 74 So.2d 844 (1954); and Shaw v. Bula Cannon Shops, Inc., 205 Miss. 458, 38 So.2d 916 (1949).
We are of the opinion that the circuit court was in error in dismissing appellants' *116 petition for appeal. It is clear, however, that the error in this particular case is harmless as the circuit court heard the appeal under the commission's order overruling appellants' motion for review. The entire cause is before the Court on the circuit court's review of that order.
The remaining three assignments of error may be discussed together. We primarily consider the assignment regarding the rebuttable presumption of causal connection between the employment of the deceased and her death and whether or not appellee overcame this presumption. First, we need to look at the practically undisputed facts.
Mrs. Johnston had been employed by the appellee, Hattiesburg Clinic, for twenty-six years. During this period of time, the clinic grew from a relatively small three physician clinic to a large metropolitan clinic of well over 130 employees and physicians. The testimony of the deceased's husband and daughter dependents, other knowledgeable persons, and former employees, was that in recent weeks and months prior to her death, Mrs. Johnston had been under an extremely heavy work load. She was the assistant administrator of the clinic. The employment of the administrator had been terminated and Mrs. Johnston had assumed increasingly numerous tasks and had developed from a personnel and equipment supervisor to a managerial capacity. It is undisputed that prior to a few weeks before her death, Mrs. Johnston handled her duties adequately and without any adverse effects. Her personal medical records at the clinic for many years revealed a normal, healthy person, without any history of cardiovascular disease or any other serious ailments. She was a very energetic employee.
The testimony is undisputed that prior to her knowledge that the administrator was leaving and her increased duties, Mrs. Johnston reported for work between 8:30 and 9 a.m. and left work about 5:30 p.m. During the last three or four months prior to her death, she had been going to work at 8 a.m. and staying until 6:30 to 7:30 p.m. She would come home extremely tired, irritable, and upset. The clinic administrator testified that Mrs. Johnston's responsibilities during the six month period prior to her death increased pressure on her; that a new building had been completed and Mrs. Johnston's duties included the moving of personnel and adjustments in the new building, which as hereinabove stated, had grown into a very large operation.
All that is known about Mrs. Johnston's activities on the day of the onset of her heart attack also is undisputed. She arrived at work around 8 a.m. Only one person saw her from that time until the onset of her fatal attack that occurred at approximately 9:30 a.m. This person was a Mrs. Nemeth, the switchboard operator. She saw Mrs. Johnston in the clinic lounge and had coffee with her for a few minutes at approximately 9:15 a.m. According to Mrs. Nemeth when Mrs. Johnston left the lounge, she was carrying a box of stationery. Mrs. Johnston was found having the onset of her heart attack, as above stated, while she was on the elevator of the clinic. It was immediately diagnosed that she had suffered an acute myocardial infarction. She was taken to the hospital by ambulance and died approximately six hours later.
Mrs. Johnston was treated at the hospital by Dr. Gable, who had been her physician for many years. Dr. Gable appeared to be the head, or one of the top managing physicians, of the clinic.
At the hearing of the cause, appellants fully developed the facts, as hereinbefore stated in concise form. Neither appellants nor appellee introduced testimony from Dr. Gable. Appellee introduced the testimony of Dr. Cowan, a cardiologist who had been employed to practice with the clinic after the death of Mrs. Johnston. He did not know her and never treated her. Under a hypothetical question setting out the facts of the case, it was his opinion that there was no causal relation between the death of Mrs. Johnston and her employment. His opinion was that Mrs. Johnston's activities could causally relate to the onset of the attack only if she had been engaged in "extreme physical exertion." He, unlike many records before this Court, testified *117 positively that stress, fatigue, pressure, emotion, or anything except "extreme" physical exertion would have nothing whatsoever to do with aggravating any prior heart condition of Mrs. Johnston. He assumed that she had a prior condition. As hereinbefore stated the clinic records, up until her death, showed absolutely no prior condition of this kind. Dr. Gable, who did not testify, had been her personal physician for many years.
It would be helpful to look at portions of the orders of the Workmen's Compensation Commission's majority and dissenting opinions. The commission recognized the presumption of causal connection and stated:
[H]ere the employee's "lips were not sealed" to explain and relate her activities. The cause of death was explained and agreed and the decedent's activities were documented without conflict by her co-workers... . There is no unexplained cause of death. The medical and lay evidence support the fatal character of the infarct. Following the onset of her attack the deceased's condition was immediately diagnosed as a myocardial infarction and she was treated as a heart patient both at the Hattiesburg Clinic and Forrest General Hospital. The treating physician was available to comment on this question of causation, but was not called by the claimant. Also, deceased's activities on the day of her death, even up to moments before she collapsed, were fully reported. Considering this evidence, the majority members of the Commission are of the opinion that the factual requisites for the "found dead" presumption have not been established.
Before going to the dissenting opinion, we say without reservation that the statement by the majority commission that the deceased's activities on the day of her death, even up to moments before she collapsed, were clearly reported, is completely erroneous. Other than the very few minutes of having coffee with Mrs. Nemeth, no activities whatever of the deceased were shown in the evidence or in this record. There is absolutely no justification in the record for the statement by the majority.
Furthermore, it is inconceivable that the majority of the commission would base its opinion on a finding that Mrs. Johnston's "lips were not sealed." It does not take a doctor or a medical student to know that a person who has a myocardial infarction as serious as the one Mrs. Johnston had about 9:30 a.m., was taken to the hospital by ambulance and placed in intensive care, immediately sedated, given oxygen and in extremely poor physical and mental condition prior to her death in a relatively short time, was not in a position to unseal her lips and give statements as to everything she did between 8 a.m. and 9:30 a.m. She did not do so as shown by the record and an assumption that she could do so, in our opinion, is unwarranted. The minority opinion followed the record and pointed out in detail what is shown in the record as hereinbefore briefly condensed.
As stated, there are a number of cases directly in point on the practically undisputed facts in the case sub judice. A number of cases have held that when an employee is found dead at his place of employment, the presumption of causal relation to the employment arises. See Alexander v. Campbell Construction Co., 288 So.2d 4 (Miss. 1974); Holman v. Standard Oil Co. of Kentucky, 242 Miss. 657, 136 So.2d 591 (1962); and Majure v. William H. Alsup & Associates, 216 Miss. 607, 63 So.2d 113 (1953), and others.
The "found dead" presumption has been held to apply to a situation as in the case sub judice where admittedly the onset of the heart attack occurred while the employee is about his master's business. In Russell v. Sohio Southern Pipelines, Inc., 236 Miss. 722, 113 So.2d 667 (1959), this Court through Chief Justice McGehee said:
It has been heretofore recognized by our decisions that there is a presumption of a causal connection between the employment and the injury or death when the onset of a heart attack occurs while the employee is about his work and engaged in the duties of his employment, and that the fatal consequences arise out *118 of and in the course of the employment. The question therefore in this case is whether or not the employer has met the burden of overcoming that presumption.
We do not like to include long quotations from previous cases in our opinions. It appears, however, that the opinion in one case settles the issue before us. In Washington v. Greenville Manufacturing and Machine Works, 223 So.2d 642 (Miss. 1969), the deceased was found dead on the floor of his employer's premises just inside the sliding door, where he normally would have entered. He was found about twenty minutes before 7 a.m. He usually was expected to begin work about 7 a.m. It was the examining physician's opinion that the deceased had died from a heart attack and it had no causal relation to his employment. This Court, through Justice Inzer, said the following:
The rule is firmly established in this state when an employee is found dead at a place where his duties require him to be or where he might properly be in the performance of his duties during work hours in the absence of evidence that he was not engaged in his employer's business, there is a presumption that the accident arose out of and in the course of his employment. Winters Hardwood Dimension Co. v. Harris' Dependents, 236 Miss. 757, 112 So.2d 227 (1959); Majure v. William H. Alsup & Associates, 216 Miss. 607, 63 So.2d 113 (1953).
There is absolutely no evidence that Washington was not about his master's business when he met his death. Assuming that the testimony of the doctor is sufficient evidence to support the finding by the commission that Washington died as a result of a heart attack, there is still the presumption that the heart attack resulting in death was causally connected to Washington's work activities. The question is whether the employer overcame this presumption by substantial evidence. In the case of Holman v. Standard Oil Co. of Ky., 242 Miss. 657, 136 So.2d 591 (1962), we stated the rule relative to the strength of this presumption as follows:
In the recent case of Russell v. Sohio Southern Pipe Lines, Inc., 236 Miss. 722, 112 So.2d 357, 360, 113 So.2d 667, this Court said: "it has been heretofore recognized by our decisions that there is a presumption of a causal connection between the employment and the injury or death when the onset of a heart attack occurs while the employee is about his work and engaged in the duties of his employment, and that the fatal consequences arise out of and in the course of the employment." See also Dunn's Mississippi Workmen's Compensation 1960 Supplement, Sec. 54, p. 26, where the author says: "In the more recent cases, the presumption of causal connection, arising out of the fact that an attack occurs on the job, has increased in judicial favor to the point that it has shifted the burden of proof to the defendant and has assumed the dual effect of an inference of such strength as to require an award, as a matter of law, despite conflicting medical opinions or the absence of medical corroboration." Compare the cases there cited as documentation of the above principle. (242 Miss. at 666, 136 So.2d at 594).
The doctor assumed that Washington's employment had not contributed to his heart attack. He based this assumption on information of Washington's "usual morning routine" although there is no evidence as to what Washington did on this particular morning. If we are to indulge in assumptions it would also be logical to assume that the door stuck for some reason when Washington tried to open it and that in order for him to open the door he had to exert unusual and strenuous effort which triggered the heart attack. Then there are other assumptions favorable to the employee which could be indulged in if we are to indulge in such assumptions. It is as stated in Holman, supra:

Repeatedly this Court has held that the Workmen's Compensation Law "should be broadly and liberally construed"; *119 that "doubtful cases should be resolved in favor of compensation"; and that "the humane purposes the act seeks to serve leave no room for narrow and technical construction." Ingalls Shipbuilding Corp. v. Howell, 221 Miss. 824, 74 So.2d 863; Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So.2d 351, 112 So.2d 230, and the cases there cited. (242 Miss. at 667, 136 So.2d at 594).
The employer earnestly contends that since the majority of the commission found that it had overcome the presumption that we should affirm this case. We are of the opinion that there was no substantial evidence to support this finding. Furthermore, in Russell v. Sohio Southern Pipe Lines, Inc., 236 Miss. 722, 112 So.2d 357 (1959), this Court said:
The Court is of the opinion that under the cases of Goodnite v. Farm Equipment Company [234 Miss. 342,] 103 So.2d 391, Poole v. R.F. Learned & Son, [234 Miss. 362, 103 So.2d 396, and particularly the case of Central Electric Power Association v. Hicks [236 Miss. 378, 110 So.2d 351, we are not bound by the decision of the Workmen's Compensation Commission in all cases where the testimony is conflicting. The writer of this opinion and two other Judges dissented in the Hicks case and also in the case of Shivers v. Biloxi-Gulfport Daily Herald, [236 Miss. 303] 110 So.2d 359, but we are nevertheless bound by the majority opinion in those cases. In the Hicks case, supra [110 So.2d 356] it was recognized in the majority opinion that "The general rule is that a decision of the commission on disputed issues of fact will be affirmed, where there is substantial and reasonable evidence in the record to support the commission's findings of fact. As an abstract statement, that rule is correct, but it means nothing apart from the statutory standards, and the judicial standards based upon the statutes which have been established in a large number of cases in recent years. These standards always consist of two parts, one defining the type of questions administrative determination of which is binding upon the courts, and another which defines the type of questions that are reviewable by the courts. But either part is and should be sufficiently flexible to permit the court to check any fundamentally erroneous exercise of administrative power. And questions of fundamental importance are always open to judicial review. 42 Am. Jur. Public Administrative Law, Sec. 206. There must be an application of the pertinent statute in a just and reasonable manner."
In other words, in the Hicks case, supra, the Court held in effect that notwithstanding that the testimony is conflicting and the Commission's findings are supported by substantial evidence, this Court will nevertheless seek to ascertain whether or not the beneficent purpose of the Workmen's Compensation Law has been carried out. (236 Miss. at 731, 732, 112 So.2d at 360, 361).
Appellee cites and relies upon the case of Union Producing Co. v. Dependents of Simpson, 251 Miss. 183, 168 So.2d 808 (1964), but the rule announced in Simpson is not applicable here because we do not know what Washington was doing at the time of his heart attack. Simpson is unusual in that the facts were fully developed both as to his work activities from the time he arrived at work that morning and the cause of his death. We held that the presumption of causal connection disappeared because the facts were fully developed and that there was no substantial evidence to support a finding that his work activities caused or contributed to his heart attack. In Mississippi State University v. Dependents of Hattaway, 191 So.2d 418 (Miss. 1966), we rejected the rule announced in Simpson and held that although the work activities of Hattaway were fully developed and although he died in the presence of witnesses, the presumption of causal connection was not overcome because the cause of death was unexplained. In order to overcome the *120 presumption of causal connection not only must the cause of death be explained, but the work activities of the decedent must also be fully developed to show that such activities did not cause or contribute to the heart attack.
We hold that the commission and the circuit court were in error in holding that appellee had overcome the presumption that Washington's death was causally related to his work activities.
The only physician who testified (Dr. Cowan, appellee's employee), gave the following testimony:
A. My opinion is based on the fact that I have not been told that she did any strenuous physical exertion and that her job as described to me does not involve the type of strenuous physical exertion that would be required to precipitate a heart attack.
Q. Okay. That's what I'm trying to ascertain. It's your opinion that physical exertion is the necessary requirement in order to determine whether or not a heart attack is work related?
A. Yes, sir.
* * * * * *
Q. And whether or not she was engaged in any physical exertion or not engaged in any physical exertion, you do not know?
A. No.
Q. You only assume that she did not, and based upon that assumption, then you say her attack was not work related?
A. Yes, sir.
Reiterating that hereinabove set out, the only evidence that this member of the medical profession had regarding the work activities of Mrs. Johnston from the time she arrived at 8 a.m. until the known onset of her attack at 9:30 a.m. was the four or five minute period she was having coffee with Mrs. Nemeth. Furthermore, we have the unqualified testimony of Dr. Cowan, of appellee's clinic, that he was basing his testimony on an assumption. This clearly does not satisfy the standards set out in prior cases, including Washington, supra.
We hold that appellees did not meet the presumption necessary for them to have met under the hereinabove discussed cases and it is therefore, necessary that the cause be reversed, rendered and remanded to the commission for further proceedings.
REVERSED AND RENDERED, AND REMANDED TO THE COMMISSION.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.