288 So.2d 4 (1974)
Mrs. Catherine ALEXANDER
v.
CAMPBELL CONSTRUCTION COMPANY and Hartford Accident & Indemnity Company.
No. 47299.
Supreme Court of Mississippi.
January 7, 1974.
Rehearing Denied January 28, 1974.
Heidelberg, Woodliff & Franks, Sam E. Scott, Jackson, for appellant.
Daniel, Coker, Horton, Bell & Dukes, Donald V. Burch, Jackson, for appellees.
WALKER, Justice:
This case involves a claim for death benefits under the Workmen's Compensation Act by Mrs. Catherine Alexander, the wife and dependent of the deceased, George W. Alexander. The attorney-referee found *5 against claimant and an appeal was taken to the full Commission, a majority of which reversed the attorney-referee and allowed recovery but remanded the case for an apportionment by the attorney-referee. The employer-carrier appealed to the Circuit Court of Hinds County which reversed the order of the Commission and reinstated the order of the attorney-referee denying and dismissing the claim for workmen's compensation benefits. From that judgment the claimant appeals to this Court.
Appellant, Mrs. (Catherine) George W. Alexander, dependent of the deceased Alexander filed a claim for death benefits under the Workmen's Compensation Act, alleging in her B-5, 11 that her husband, George W. Alexander, age sixty-eight, was working at his desk in his office at Campbell Construction Company on August 29, 1968, and "died of heart attack." The deceased was an estimator for Campbell Construction Company where on the afternoon of August 29 at approximately four o'clock p.m., he was found unconscious  slumped over his desk over a set of plans. At the time he was found, he was heard to make a gasping sound but did not respond when his name was called. It was shown that he had swallowed his tongue, was not breathing and had no pulse or heartbeat. Artificial resuscitation was attempted, but to no avail. Contrary to appellee's contention, we are of the opinion that the evidence is clear that Alexander was dead at the time he was found. This being true, a presumption arose that the deceased died as a result of an accidental injury in the course of his employment and further that there was a causal connection between such employment and the employee's death. This Court held in Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642, 645 (Miss. 1969), with Justice Inzer speaking for the Court that:
The rule is firmly established in this state when an employee is found dead at a place where his duties require him to be or where he might properly be in the performance of his duties during work hours in the absence of evidence that he was not engaged in his employer's business, there is a presumption that the accident arose out of and in the course of his employment.
Also see Dunn, Mississippi Workmen's Compensation section 269 (2d ed. 1967); Mississippi State University v. Dependents of Hattaway, 191 So.2d 418 (Miss. 1966); Winters Hardwood Dimension Company v. Harris' Dependents, 236 Miss. 757, 112 So.2d 227 (1959); Majure v. William H. Alsup & Associates, 216 Miss. 607, 63 So.2d 113 (1953).
In Washington v. Greenville Manufacturing & Machine Works, supra, this Court held that:
In order to overcome the presumption of causal connection not only must the cause of death be explained, but the work activities of the decedent must also be fully developed to show that such activities did not cause or contribute to the heart attack. (223 So.2d at 647).
The question presented here is whether or not the employer-carrier sufficiently rebutted the presumption of causal connection which arose out of the employee having been found dead at his desk where he usually worked.
In an attempt to rebut the presumption which had arisen, the employer-carrier presented evidence to show that the death of Alexander was due to a heart attack.
Additionally, in an attempt to show that there was no causal relation between decedent's death and his employment, the employer-carrier posed a hypothetical question to Dr. William H. Boggan and Dr. Earle Fyke, each of whom were asked if they had an opinion as to whether or not the employment or work activities as "related to you" in any way was a factor precipitating or aggravating the cause of Alexander's death. Substantially the same hypothetical *6 question was posed to each doctor and is as follows:
Q. Doctor, I'll ask you to assume the following facts, please, sir: Assume that on August 29, 1968, Mr. Alexander was sixty-eight years of age. For about twenty years his profession had been that of an estimator, the last ten years of which he had been employed by Campbell Construction Company. This work involved taking blueprints and determining the quantities of materials necessary for the construction of buildings, obtaining sub-bids in establishing a bid price for the job. He was very efficient in his job and enjoyed his work very much. He worked from eight to five, five days a week with one hour off for lunch and his work was all done in a private office.
The nature of the work was such that on the average of every two or three weeks there would be a day or two when there would be no work to be performed  no bids in the process of being worked up. He was, as indicated, a good worker and his job was secure, highly regarded by his employer. The office was located in a one-story building at ground level with no stairs.
In October of 1962 he had had a medical checkup. At that time his blood pressure was 190/100, he was found to be mildly obese. An electrocardiographic tracing was within normal limits and he was placed on hypertensive medication. Thereafter, examinations were in January, 1963, May, 1966, and his blood pressure was 160/100. In June of '69 his blood pressure was 170/100 with the antihypertensive medication being continued.
On August 16, 1968, he awakened about six a.m. with shortness of breath and rapid heart beat. He was taken to the Emergency Room at the hospital and admitted in acute pulmonary edema. Electrocardiographic tracings showed minimal changes of left ventricular strain with reversion after congestive failure after he responded to Digitalis and the usual medication. He was discharged from the hospital on August 20, 1968.
He returned to work on August 26, 1968, which was on a Monday, and was seen by the doctor on that same date. His blood pressure was 160/90. Electricardiographic tracings showed evidence of an old posterior myocardial infarction with minimal ST segments depression compatible with a Digitalis effect. He was continued on Peritrate, continued on Digitalis, low salt diet and instructed to rest and was allowed mild activity and light work. He was permitted to return to light work.
He continued about his work for Campbell Construction Company; and on the morning of August 29, he went to the office at the usual time. An estimating job had been completed the day before. However, fifteen or twenty minutes that morning had been spent in conference with Mr. Campbell putting the finishing touches on a bid. Mr. Alexander had lunch at the office about twelve noon. There was no job pressing at the time. He went to the bank on his lunch hour. Shortly before two p.m. he left the office and was an active pallbearer at the funeral of an old friend of his. He returned to the office at approximately three forty-five p.m., walked out behind the office and talked to a fellow-employee a few minutes commenting on the weather and made no complaints. He had no complaints. He returned to his office about four o'clock, and approximately five minutes later he was found slumped over his deak (sic). There was no evidence of any trauma. He did not speak. Was breathing heavily and gasping. An ambulance was summoned and arrived in fifteen or twenty minutes. Mouth to mouth resuscitation was attempted and there was no apparent response. Shortly after his arrival at the hospital, he was declared dead. *7 The death certificate introduced into evidence shows the cause of death coronary thrombosis.
Doctor, based on those facts that have been posed to you hypothetically, do you have an opinion as to what was the cause of death of Mr. Alexander?
There was an objection to the hypothetical by the claimant each time that it was posed on the grounds that (1) it assumed facts that were not in evidence, and (2) omitted material facts that were in evidence. The objection was overruled and the doctors answered the question in the negative.
We agree with appellant's contention that the hypothetical was objectionable for the reason that it assumed facts that were not in evidence. First, it erroneously assumed that the bid which Alexander had been working on was completed the day before he died, when, at best, the testimony of J.H. Campbell, III, Secretary-Treasurer of Campbell Construction Company is to the effect that the bid had "primarily been completed on the 28th" but that the deceased had had a conference about the bid with Campbell on the morning of his death. Parenthetically, we would point out that there is no explanation as to what occurred at that meeting, nor is there any further evidence as to what activities the deceased engaged in during the remaining portion of that morning. It may be reasonably inferred that he continued to work in connection with the contract bid which was to be let during that day since he remained in the office during the lunch hour, a practice which was his custom only when he was under a deadline to complete a bid.
Second, the hypothetical erroneously assumed that there was no job pressing at the time Alexander died. This assumption was based on the younger Campbell's testimony that his father, the elder Campbell's normal practice was not to leave town when there was a job pending within the next few days, and that he did in fact leave town on the day of the deceased's death. Such an assumption is not competent evidence and is akin to the type question that was condemned by this Court in the case of Washington v. Greenville Manufacturing & Machine Works, supra, where it was stated:
This hypothetical question was clearly erroneous because of the inclusion of the underlined portion which introduces facts which were not within the witness' knowledge or in evidence. Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965). (223 So.2d at 645).
Third, the hypothetical asked the doctors to erroneously assume that the deceased's job was secure when there was no evidence to that effect. It is the contention of the appellee that such a reasonable conclusion can be drawn from the testimony of Mr. Campbell, who testified that he thought the deceased was a diligent, hard-working and competent employee. We do not agree that this testimony necessarily adds up to "job security" as that term would apply to this case. The important thing is not what Mr. Campbell thought, but whether or not the deceased felt secure in his job, and that question is left in serious doubt by the testimony of Mrs. Alexander as will be mentioned later.
These erroneous assumptions of fact were very material to the primary question as to whether there was a causal connection between deceased's employment and his death, and, consequently were misleading. Williams Bros. Co. v. McIntosh, 226 Miss. 553, 84 So.2d 692 (1956).
We are therefore of the opinion that that Workmen's Compensation Commission properly excluded the opinions of the doctors that were based on the defective hypothetical and without the doctors' opinions there was insufficient evidence to show that the work activities of the deceased did not cause or contribute to the heart attack. To the contrary, Mrs. Alexander testified that the deceased constantly worried about *8 his job responsibility in that if he overestimated a job the company would not be awarded the contract and if he underestimated it, the company would lose money. She further testified that he worried about his work and talked to her about problems at the company; that he had become nervous and was easy to "flare up" and on several occasions she had heard him complain that "Well, we have a letting this afternoon but I don't see any use in going because they have got the prices too high;" and, that when the company raised his bid price and failed to get the job that he had the feeling of inadequacy; that he was concerned and worried that the company was spending too much time on strand-steel jobs than on the other aspects of the business; that he complained to her that Mr. Campbell would always put him off until the last minute to get a job together before a bid, as appeared to be the case on the day of his death, and that this was taxing to him and caused tension.
Moreover, it was developed by the testimony that the two doctors were of different "schools of thought" as to the effect of exertion and stress as it relates to a coronary artery disease. Dr. Boggan was of the opinion that the disease is not officially affected by anything other than extreme exertion. On the other hand, Dr. Fyke was of another school of thought and expressed his feelings thusly:
I think factors relative to worry which can be converted into the term stress certainly would over the long run have something to do with the progression of the underlying blood vessel disease, which leads up to heart attacks which in turn may lead to a person's death.
He further testified that "... stress is probably best defined as man's reaction to his environment... ." And again he testified that it "Can hasten and accelerate the disease which leads up to the heart attack." He was further asked this question:
And if Mr. Alexander had been under stress in his work, isn't it a fact that that could have hastened or accelerated the disease which ultimately lead (sic) to his death?
A. Yes, sir, I think this is correct... . I'm stating that his stressful circumstances or his reaction to circumstances, which may have been stressful to him, could have progressively and gradually contributed to the final occurrence very much as the analogy of the straw that broke the camel's back. I don't know that one straw contributed more than another straw, but it was the culmination of all these things which ultimately lead (sic) to this (death).
In view of the above testimony, we are of the opinion that there was substantial evidence upon which the Workmen's Compensation Commission could have found the decedent's employment aggravated his preexisting condition and thereby contributed to his death.
Since it is undisputed that deceased had a history of hypertensive vascular disease dating from about 1962, this case must be remanded for an apportionment of benefits as ordered by the Workmen's Compensation Commission.
We are, therefore, of the opinion that the judgment of the circuit court should be reversed and the order of the Workmen's Compensation Commission remanding the cause to the attorney-referee for an apportionment should be reinstated.
Reversed and order of Workmen's Compensation Commission reinstated remanding case to attorney-referee for purpose of apportioning benefits.
RODGERS, P.J., and INZER, ROBERTSON and BROOM, JJ., concur.