493 So.2d 318 (1986)
ROAD MAINTENANCE SUPPLY, INC. and Western Casualty & Surety Company,
v.
DEPENDENTS OF James L. MAXWELL, Jr., Deceased.
No. 55654.
Supreme Court of Mississippi.
July 30, 1986.
Rehearing Denied September 17, 1986.
*319 Joseph L. McCoy, McCoy, Wilkins, Noblin, Anderson & Stephens, Jackson, for appellant.
William S. Lawson, Tupelo, Thomas J. Lowe, Jr., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This workers' compensation death benefits case calls for a sensitive application of the familiar "found dead" presumption. The Mississippi Workers' Compensation Commission, adopting the opinion of the Administrative Judge, found that the deceased died at a place where his duties required him to be during his regular hours of work and that the cause of his death was unexplained and unknown. The Commission thus applied the presumption to award death benefits.
In the face of the presumption, the employer and carrier failed to come forward with credible evidence that decedent's work activities did not cause or contribute to his death. In this state of the record the Commission correctly held that death arose out of and in the course and scope of the worker's employment. We affirm in part. Because the Commission ignored uncontradicted medical evidence that, for several years prior to his death, the worker suffered cardiovascular disease, we remand for apportionment.

II.

A.
This matter arises out of the death of James L. Maxwell, Jr. on February 28, 1980, in Tishomingo County, Mississippi. At the time Maxwell was 49 years of age. On the day of his death Maxwell was employed as a truck driver for a subcontractor on the Tennessee-Tombigbee Waterway Project and was hauling stone material to the job site. Two co-workers, Willard T. Reno and William H. Whitaker, were in the immediate vicinity at the time of Maxwell's death. Their testimony, in substance, was that Maxwell was standing on some rocks behind Reno's truck, with one hand on the bed of the truck and the other on the tailgate. Maxwell fell for no apparent reason.
When Reno reached him, Maxwell was lying on the ground, a gash in the back of his head. Neither Reno nor Whitaker knew what caused Maxwell to fall. Maxwell was rushed to the Tishomingo County Hospital where he was pronounced dead by Dr. Kelly Segars. Dr. Segars did not perform an autopsy, nor did anyone else. He did indicate on the death certificate that the "immediate cause" of death was "acute myocardial infarction". Dr. Segars examined the laceration on the back of the decedent's head and gave his opinion that it was not related to the cause of death.
Dr. Al Flannery gave testimony regarding Maxwell's medical history. Dr. Flannery is engaged in family practice in Iuka, Mississippi. He was Maxwell's personal physician from June 10, 1978 until Maxwell's death some one year, eight and a half months later. Dr. Flannery testified that Maxwell had a history of heart trouble dating back at least to 1975, that Maxwell had had a blackout spell associated with heart fluttering approximately a year before his death and that in the ensuing year Maxwell was taking heart medicine Dr. Flannery had prescribed. Dr. Flannery reviewed the testimony of the fact witnesses to Maxwell's death together with the testimony of Dr. Segars. Based upon all of this prior testimony  including the description *320 of Maxwell's work activities immediately preceding his death, coupled with his own personal knowledge of Maxwell's general state of health  Dr. Flannery offered his opinion
that this man suffered most likely a Stokes-Adams attack at the time of this, and that this was most likely precipitated either by severe cardiac arithymia or a myocardial infarction and that this was the cause of this man's death... . I don't think it was anything to do with the work that he was doing. This man could have had a similar spell walking down the street, or he could have had them at home. He could have had them anywhere. He just happened to be at work when he had them.

B.
Procedurally this workers' compensation proceeding was commenced on February 23, 1982, when Betty Jean Maxwell of Burnsville, Mississippi, on behalf of herself and her two children, filed a motion to controvert seeking death benefits. After several hearings, the Administrative Judge on August 15, 1983, relying upon the "found dead presumption" held that Maxwell had presented a compensable claim and awarded full death benefits. On February 28, 1984, the Mississippi Workers' Compensation Commission adopted the opinion of the Administrative Judge and affirmed. Thereafter employer and carrier appealed to the Circuit Court of Tishomingo County, Mississippi, which on May 9, 1984, affirmed. The present appeal has followed.

III.

A.
We do not write upon a clean slate.
When a worker is found dead at a place where the duties of his employment required him to be, our law presumes  albeit rebuttably  that his death was in whole or in part the result of an accident arising out of and in the course of his employment. See, e.g., Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642, 645 (Miss. 1969); Mississippi State University v. Dependent of Hattaway, 191 So.2d 418, 419 (Miss. 1966); Dunn, Mississippi Workmen's Compensation § 269 at p. 328 (3d ed. 1982). This is so without regard to whether his death is witnessed by others. City of Okolona v. Dependent of Harlow, 244 So.2d 25, 26 (Miss. 1971); Mississippi State University v. Dependent of Hattaway, 191 So.2d 418, 420 (Miss. 1966).
As the presumption has evolved, it has come to be employed in two separate factual contexts. First, did the decedent die in the "course of employment", i.e., was he or she on the job at the timu of death? See, e.g., Murphy v. Jac-See Packing Co., 208 So.2d 773, 776-77 (Miss. 1968); Watson v. National Burial Association, Inc., 234 Miss. 749, 107 So.2d 739 (1958). Second, was there a causal connection between the employee's work activities and his death, i.e., was the death in whole or in part work connected? See, e.g., McCarley v. Iuka Shirt Co., 258 So.2d 421, 422 (Miss. 1972); Mississippi State University v. Dependents of Hattaway, 191 So.2d 418, 419-20 (Miss. 1966).
The first question need not detain us. Affirmative and uncontradicted evidence establishes that Maxwell was at work and on the job at the time of his death. Death arose in the course of his employment.
The causal connection point is more difficult. Employer and carrier argue for reversal on the premise that the medical evidence of Dr. Segars and Dr. Flannery was sufficient to eviscerate the presumption. Where the cause of death is shown and the events concerning the death are in the record, the presumption disappears, or so employer and carrier argue.
The thesis is flawed. The rule which has become denominated the "found dead" presumption must not be applied in such a way that it discourages the production of evidence. The argument advanced by employer and carrier would, if we were to accept it, make claimant look foolish for having *321 produced any evidence at all beyond the mere fact that Maxwell was found dead on the job. Once the presumption arises, the claimant does not torpedo her case if she adduces further proof not inconsistent with the presumption.
What causes the presumption to disappear is credible evidence that the deceased employee's work "activities did not cause or contribute to the heart attack". Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642, 647 (Miss. 1969), cited and quoted with approval in Johnston v. Hattiesburg Clinic, P.A., 423 So.2d 114, 119-20 (Miss. 1982); Alexander v. Campbell Construction Company, 288 So.2d 4, 5 (Miss. 1974); and McCarley v. Iuka Shirt Co., 258 So.2d 421, 422 (Miss. 1972); City of Okolona v. Dependent of Harlow, 244 So.2d 25, 26 (Miss. 1971).
So long as the evidence adduced is consistent with the proposition that the deceased worker's death resulted in the course of his employment and was causally connected in whole or in part to that employment, the presumption does not disappear  although in practical effect there certainly may become a point where the proof is so strong that the presumption is subsumed by the evidence. The presumption remains in effect as claimant produces not inconsistent proof to avoid the incongruous situation where a case might fall within cracks that may be found between (a) those cases where there is not enough evidence to cause the presumption to disappear and (b) those where there may be thought too much evidence for the presumption to survive but not enough to carry the claimant's burden. Only when there is adduced substantial credible evidence inconsistent with the presumption does it evaporate.
We find no rational basis upon which this case might be distinguished from Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642 (Miss. 1969). In Washington, as here, the deceased's personal physician testified that for five years before his death Washington had suffered from cardiovascular disease. That physician examined Washington's body immediately following death and listed the cause of death as "cardiac arithymia". No autopsy was performed. Based upon his knowledge of the worker's prior medical history together with information he had received about the employee's work routine, the physician gave an opinion that the worker's death was not work connected. This Court held the physician's opinion on the work connection issue too speculative to overcome the "found dead" presumption.
Washington formed the outcome determinative precedent in Alexander v. Campbell Construction Company, 288 So.2d 4 Miss. 1974), another case whose facts are analogous to those in the case at bar. The authoritative status of Washington was recently reaffirmed in Johnston v. Hattiesburg Clinic, P.A., 423 So.2d 114 (Miss. 1982) the opinion in which contains almost two full pages of verbatim quotation from Washington. Johnston, 423 So.2d at 118-20.
In today's case, we have no credible medical expert opinion testimony to the effect that Maxwell's death, even assuming it to have been the result of a heart attack, was not caused at least in part by his work activities. Dr. Flannery, a family practitioner, merely stated that he didn't think Maxwell's work had anything to do with his death, that he "could have had a similar spell walking down the street, or ... at home". But the fact is that Maxwell didn't have his fatal attack walking down the street or at home. It occurred while he was on the job. If anything, Dr. Flannery's opinion is less substantial than that of the attending physician in Washington. Dr. Segars offers employer and carrier no help for he was never even asked the question regarding causal connection.
James L. Maxwell, Jr. fell and died at his place of employment during his regular hours of employment. A rebuttable presumption arose that his death was in whole or in part causally related to his employment. Employer and carrier at that point had the burden of going forward with credible evidence  as distinguished from *322 guesswork, speculation and conjecture  that Maxwell's death was not work connected. It avails employer and carrier nothing to say that the evidence that Maxwell's death was work connected is slim. Our law burdened them to produce credible evidence to the contrary, on penalty of having the issue resolved in claimant's favor. On the authority of Washington and progeny, we hold that employer and carrier failed to meet their burden.

B.
No doubt some think the presumption we affirm unduly harsh, although no one has this day urged that we abandon it. The point for the moment is that the criticisms often leveled at the presumption invariably invoke cries of unfairness to the employer and carrier. E.g., Lagrone, Let's Abolish The "Found Dead" Presumption, 41 Miss. L.J. 233, 244 (1970). Unmasked, these criticisms are that what is unfair to the employer and carrier is that they are being ordered to pay compensation for injuries and deaths employer did not cause. The legally discarded ideas of fault and personal culpability have not been jettisoned from the subconscious.
A review of our reported cases reflects a variety of contexts in which compensation has been allowed and where no one could seriously argue that the employer caused the injury. See, e.g., Jackson v. Bailey, 234 Miss. 697, 107 So.2d 593 (1958) (compensation allowed where employee struck by lightning); Wiggins v. Knox Glass, Inc., 219 So.2d 154 (Miss. 1969) (compensated when on-the-job injury was caused by a tornado); Big "2" Empire Rebuilders v. Freeman, 379 So.2d 888 (Miss. 1980) (compensation allowed when on-the-job injury caused by unexplained attack by unknown assailant); Johnson v. Roundtree, 406 So.2d 810 (Miss. 1981) (compensation allowed taxicab driver victim of robbery and assault).
Heart attack cases rationally present a stronger case for compensation than those just enumerated, for in such cases compensability arises only where work connected activities have played some part in causing the attack. The "found dead" presumption is a rule allocating the burden of production of evidence under which the employer and carrier may well escape liability upon proof that the worker's death was wholly unrelated to his work activities. Complaints that the burden is a difficult one belie the likelihood that, if anything, greater unfairness would attend its placement on claimant whose principal witness has been silenced by death.
When a worker dies on the job  as here, leaving surviving him a widow and two children  a substantial economic loss has occurred, one which can be measured and calculated in dollars and cents. The question is where that loss will fall, or how it may ultimately be allocated among the affected parties. Fault and personal culpability are irrelevant to this allocation process.
Because of statutory limits on compensation, we know that a major portion of this quantifiable economic loss (plus all of the non-economic losses) will fall on the shoulders of the deceased worker's dependents. Miss. Code Ann. § 71-3-25 (Supp. 1985). Payment of death benefits in the maximum amount allowed under the act in the ordinary case compensates these dependents for substantially less than half their actual economic losses. The question for decision is who will bear the remainder of the economic cost resulting from the worker's death: the deceased worker's dependents or the employer, who at least has the advantage of spreading the losses through insurance and treating compensation insurance as a cost of doing business, a cost to be passed on to the consumers of the employer's goods or services. McCluskey v. Thompson, 363 So.2d 256, 259 (Miss. 1978). It is in this context that we should understand this Court's oft-expressed views that (1) close questions of compensability should be resolved in favor of the worker, e.g., Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss. 1980) and (2) the act should be interpreted liberally to carry out the legislature's purposes in adopting *323 remedial, social legislation, Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss. 1980), all of which has been influenced by the restricted remedy available to the worker and the fact that the employer benefits by being protected against over remedies by the worker. Miss. Code Ann. § 71-3-9 (Supp. 1972). It is also in this context that we regard the "found dead" presumption as distributively fair.[1]

IV.
In the alternative, Employer and Carrier argue that the Commission erred in failing to order apportionment. We agree.
Miss. Code Ann. § 71-3-7 (1972) stated in pertinent part:
Where a preexisting physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury.
Reiterating the ground rules for apportionment benefits, we stated in Delta Drilling Company, et al v. Cannette, 489 So.2d 1378, 1381 (Miss. 1986):
To be entitled to apportionment, however, the employer must establish the four factors ... (1) that there must be a preexisting physical handicap, disease, or lesion; (2) this preexisting condition must be shown by medical findings; (3) to be a material contributing factor in the results following injury; and (4) the compensation otherwise payable is reduced by the proportion which the preexisting condition contributed to the production of the results following the injury. (citations omitted)
The record reflects without contradiction that Maxwell had a preexisting heart condition. Dr. Flannery's almost two years of treatment supplied the necessary medical undergirding. The record also contains overwhelming evidence that this preexisting condition was a factor contributing to the death of Maxwell. Under these circumstances, the matter should be remanded to the Circuit Court and ultimately to the Mississippi Workers' Compensation Commission for apportionment. Alexander v. Campbell Construction Co., 288 So.2d 4, 8 (Miss. 1974); Leake County Cooperative (A.A.L.) v. Dependents of Barrett, 226 So.2d 608, 614 (Miss. 1969); Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642, 647 (Miss. 1969).
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] An illustration of the economic impact of the present loss allocation when a worker dies on the job might be helpful. Assuming full compensation without apportionment, an average weekly wage of $100.00 and a normal work life expectancy to age 65, the loss upon death at 49, computed variously, looks something like this.

 A B C
 Total Amt. of Loss Amt. of Loss
 Economic Allocated Allocated To
 Loss To Maxwell's Employer &
 Dependents Carrier
------------------------------------------------------------------
Lost Wages
1986-2002 $88,400.00 $63,650.00 $24,750.00
Loss, adjusted for
inflation & using 3 71,011.00 46,263.00 24,748.00
month Treasury
bill market yield
Loss, adjusted for
inflation & using 64,769.00 41,029.00 23,740.00
3-year Treasury
bill market yield
 Source: Mississippi Research and Development Center, July, 1986.

The point is apparent though modest. The present legislative system of compensation death benefits mandates that approximately two-thirds of the immediate economic loss attendant upon a worker's death be shouldered by his dependents, although no one talks much about the fact. When, as here, their exposure is so small, relatively speaking, particularly where as here apportionment must be ordered, it is only fair that employer and carrier should bear a stiff burden of proving that an on-the-job death was not work connected.