495 So.2d 1357 (1986)
Larry Ray CHAPMAN, Deceased, DEPENDENTS OF
v.
HANSON SCALE Company and Continental Casualty Company.
No. 55965.
Supreme Court of Mississippi.
October 15, 1986.
*1358 Stanford Young, David Slaughter, Waynesboro, for appellant.
J.R. Shannon, William B. Carter, Eppes, Watts & Shannon, Meridian, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This workers' compensation death benefits case arises out of a worker's idiopathic fall and fatal striking of his head on a concrete floor upon his employer's premises. The worker did not trip, he did not slip nor was he pushed  he just fell. Evidence suggests he may have fallen as a result of a grand mal seizure. The immediate cause of death, however, was the blow to the head.
The Mississippi Workers' Compensation Commission held the claim non-compensable for lack of the requisite work connection, and the Circuit Court affirmed. We reverse and render in part and remand in part.

II.
Larry Ray Chapman died on the job on January 17, 1981, in Shubuta, Clarke County, Mississippi. At the time Chapman was 28 years of age, having been born on September 20, 1952. On the day of his death Chapman was employed as a material handler for Hanson Scale Company. Two co-workers, Oliver Leggett and Henry Lee Mack, were in the immediate vicinity of Chapman at the time of his death. Their testimony, in substance, was that Chapman *1359 was assisting in some cleanup work. Chapman was seen pulling a wire basket toward the punch press area in the back of the plant. Mack saw Chapman stop, pull off his cap and wipe his forehead, then drop his cap and fall, his head striking the floor. Mack and Leggett and two other employees who had seen Chapman that morning all testified that prior to his fall Chapman's appearance and behavior were normal.
Leggett testified that immediately after the fall Chapman did not move or say anything. Leggett noticed that once Chapman was turned over he had a knot and cut above his left eye. Mack thought Chapman was dead before he was ever turned over. In any event, Chapman was rushed to the Watkins Hospital in Quitman, Mississippi, where he was pronounced dead on arrival.
Dr. Sergio G. Gonzalez, a Laurel, Mississippi pathologist, performed an autopsy at 8:00 the next morning. Dr. Gonzalez certified that cause of death was "cerebral contusion, concussion and edema due to blunt trauma to forehead." In other words, the immediate cause of death, according to Dr. Gonzalez, was Chapman's head striking a blunt or flat surface which, no doubt, was the concrete flooring of the Hanson Scale premises.
Dr. Loren Fleckenstein, a neurosurgeon of Meridian, Mississippi, described Chapman's pre-January 1981 medical history. Dr. Fleckenstein had first seen Chapman on July 22, 1980, as Chapman had suffered a grand mal seizure. At that time Dr. Fleckenstein gave Chapman a prescription to take dilantin three times a day. Subsequently Chapman had another seizure and Dr. Fleckenstein increased his medication. The evidence suggests that Chapman may have experienced as many as five seizures within an eight month period just prior to his death on January 17, 1981. Dr. Fleckenstein last saw Chapman on November 6, 1980. The drug screen performed by Dr. Gonzalez in connection with the autopsy showed that Chapman was free of any trace of drugs, which suggested that Chapman had not been taking his prescribed medication.
Procedurally, this workers' compensation proceeding was commenced on May 21, 1981, when Susie Chapman, on behalf of herself and her two children, filed a motion to controvert seeking death benefits. After several hearings, the Administrative Judge on September 19, 1983, found that Chapman "blacked out and fell to the concrete floor, receiving a fatal blow to his left forehead" while at his place of employment. The Administrative Judge further found that Chapman's death was not causally related to his employment and was the product of a grand mal seizure on January 17, 1981, and that this seizure was the result of a personal preexisting condition. On March 13, 1984, the Mississippi Workers' Compensation Commission adopted the opinion of the Administrative Judge and affirmed. Thereafter, Claimant appealed to the Circuit Court of Clarke County, Mississippi, which on August 30, 1984, affirmed. The present appeal has followed.

III.
The question presented upon this appeal is whether the Mississippi Workers' Compensation Commission erred in its conclusion that the connection between the employment of Larry Ray Chapman and his death on January 17, 1981, was insufficient to support a determination of compensability.
At first glance this case appears similar to the many we have considered involving the so-called "found dead" presumption. See, e.g., Road Maintenance Supply, Inc. v. Dependents of Maxwell, 493 So.2d 318 (Miss. 1986); Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642, 645 (Miss. 1969). Here we need have no resort to any such presumption for we have testimony from an eyewitness co-worker, Henry Lee Mack, that he saw Chapman fall and strike his head against the concrete floor followed by the autopsy testimony of Dr. Sergio Gonzalez that death was caused by just such a blow to the head.
Employer and carrier nevertheless argue that the Commission correctly found that *1360 Chapman's death was not work connected. They note that such a finding may not be disturbed if substantial evidence be found to support it. Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380 (Miss. 1986); Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985). A corollary proposition, of course, is that, where the findings of the Commission are contrary to the overwhelming weight of the credible evidence, we will not hesitate to reverse. Myles v. Rockwell International, 445 So.2d 528, 536-37 (Miss. 1983); Johnson v. Ferguson, 435 So.2d 1191, 1194-95 (Miss. 1983).
The work connection test arises from Miss. Code Ann. § 71-3-7 (1972). The worker's employment, however, need not have been the sole source of the injury. The claim is compensable if the injury or death is in part work connected. Road Maintenance Supply Company, Inc. v. Dependents of Maxwell, 493 So.2d 318 (Miss. 1986) (not yet reported); Big "Two" Engine Rebuilders v. Freeman, 379 So.2d 888, 890 (Miss. 1980); McCarley v. Iuka Shirt Co., 258 So.2d 421, 422 (Miss. 1972); Mississippi State University v. Dependents of Hattaway, 191 So.2d 418, 419-20 (Miss. 1966). Injury or death arises out of and in the course of employment even when the employment merely aggravates, accelerates or contributes to the injury. See Dunn, Mississippi Workers' Compensation § 164 (3d ed. 1982).
A familiar concept in workers' compensation law is that the employer takes the worker as the worker is found  with all the strengths and weaknesses the worker brings to the job. See Allen v. Metro Contract Services, Inc., 421 So.2d 1289, 1291 (Ala.App. 1982); Fox v. Alascom, Inc., 718 P.2d 977, 982 (Alaska 1986); Salt River Project v. Industrial Commission of Arizona, 128 Ariz. 541, 544, 627 P.2d 692, 695 (1981). This includes physical strengths and physical weaknesses. If a lame worker suffers an employment fall and is injured, the injury is said to arise out of and in the course of employment under the same test applied for workers not lame. By the same token, if an awkward worker stumbles and falls, the rule is the same as if the worker were agile. To the point, whether Chapman's death arose out of and in the course of employment must be decided under the same test as should be applied in the case of a worker who, without a history of grand mal seizures, fell to his death on the job.
Without contradiction Chapman's death was caused when his head struck the concrete floor of his employer's premises. We regard the floor as an appurtenance of the employer's premises the same as any other piece of equipment or fixture. We see no appreciable difference between a worker's collision with another piece of equipment, a table or a trash can, which would be compensable, e.g., Cooper's, Inc. of Mississippi v. Long, 224 So.2d 866, 868-69 (Miss. 1969), on the one hand, and a collision with a concrete floor, on the other. Both are collisions by the worker with an appurtenance of the employment, both are encounters by the worker with an employment risk, both contribute to injury or death and, as a matter of law, both arise out of and in the course of employment. We find persuasive the discussion of this point in George v. Great Eastern Food Products, Inc., 44 N.J. 44, 46-49, 207 A.2d 161, 162-63 (1965).
Employer and carrier rely heavily upon Aetna Finance Co. v. Bourgoin, 252 Miss. 852, 174 So.2d 495 (1965). In that case the injured employee suffered by epileptic seizure while operating his automobile in the course and scope of his employment in consequence of which the automobile went out of control and struck a tree, causing the injuries complained of. This Court found two sources to the injuries: the epileptic seizure, which was personal to the employee, and the risk of travel, which arose from the employment. The "two concurred to produce the injuries." 174 So.2d at 498. The same is true in the case at bar. Chapman's seizure and his head's striking his employer's concrete floor concurred to cause his death.
Employer and carrier also rely heavily upon Union Producing Company v. Dependents of Simpson, 251 Miss. 183, 168 So.2d 808 (1964), a heart attack death case *1361 resulting in a holding of non-compensability. That case is wholly distinguishable from the case at bar, for in Union Producing there is no evidence that any exposure to or encounter with a work related risk played any part in causing the worker's death. Here the concrete floor constituted such a risk.
Accepting the Commission's finding that Chapman experienced a grand mal seizure on January 17, 1981, that seizure at most combined with Chapman's head striking the concrete floor to produce his death. We say this in the absence of evidence before us that the seizure would have been fatal had Chapman's head not struck the concrete floor.
We recognize that there is dicta in the Aetna Finance case to the effect that the case of "a person who merely falls to the floor" would be "entirely different." 174 So.2d at 498. See also Coopers, Inc. of Mississippi v. Long, 224 So.2d 866 (Miss. 1969). We do not take Aetna Finance as having decided the point for five years thereafter the Court pretermitted decision on the question whether an idiopathic fall on a level floor was sufficiently work connected so that compensation would be payable. Doctors Hospital of Jackson, Inc. v. Becker, 235 So.2d 702, 703 (Miss. 1970).
We consider exposure to falls upon a concrete floor a sufficient risk attendant upon employment so that an injury caused in part thereby is compensable. Larry Ray Chapman, while at his usual place of work, fell and struck his head upon just such a floor and as a result died. His death arose out of and within the course and scope of his employment. Miss. Code Ann. § 71-3-7 (1972).

IV.
In reversing we are by no means authorized in the face of this record to order payment of full death benefits. We regard this as an appropriate case for an apportioned award.
Miss. Code Ann. § 71-3-7 (1972) provides in pertinent part:
Where a preexisting physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury.
Reiterating the ground rules for apportionment benefits, we stated in Delta Drilling Company v. Cannette, 489 So.2d 1378, 1381 (Miss. 1986):
To be entitled to apportionment, however, the employer must establish the four factors ... (1) that there must be a preexisting physical handicap, disease, or lesion; (2) this preexisting condition must be shown by medical findings; (3) to be a material contributing factor in the results following injury; and (4) the compensation otherwise payable is reduced by the proportion which the preexisting condition contributed to the production of the results following the injury. (citations omitted)
The record reflects without contradiction that Chapman had a preexisting epileptic condition. Dr. Fleckenstein's six months of treatment in late 1980 supplied the necessary medical undergirding. We accept without hesitation the Commission's finding that this condition was a factor contributing to Chapman's death. Under these circumstances, the matter should be remanded to the Circuit Court and ultimately to the Mississippi Workers' Compensation Commission for apportionment. Road Maintenance Supply, Inc. v. Dependents of Maxwell, 493 So.2d 318 (Miss. 1986) (not yet reported); Alexander v. Campbell Construction Co., 288 So.2d 4, 8 (Miss. 1974); Leake County Cooperative (A.A.L.) v. Dependents of Barrett, 226 So.2d 608, 614 (Miss. 1969); Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642, 647 (Miss. 1969).
AFFIRMED IN PART; REVERSED AND RENDERED IN PART AND REMANDED IN PART.
*1362 WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.